**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| NUTRACEUTICAL CORPORATION, a Utah corporation, | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| VITACOST.COM, INC., a Florida corporation, | **Case No.  2:05CV222DAK** |
| Defendant. | |

This matter is before the court on Defendant Vitacost's Motion to Dismiss.  The court held a hearing on the motion on March 14, 2006.  At the hearing, Peggy Tomsic and Kristopher Kaufman represented Plaintiff Nutraceutical Corporation ("Nutraceutical").  Sean Egan and Ira Kerker represented Defendant Vitacost.com Inc ("Vitacost").  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

This action arises from Vitacost's persistent, yet fruitless attempts to persuade Nutraceutical to enter into a business relationship with Vitacost.

Nutraceutical, along with its wholly owned subsidiaries, is in the business of developing, manufacturing, marketing and selling dietary supplements and the ingredients to manufacture dietary supplements.  Nutraceutical's headquarters, manufacturing, research, executive marketing and sales facilities are all located in Utah.

Vitacost is a discount retailer of dietary supplements.  Vitacost sells its products to the general public throughout the United States, including Utah, primarily over the internet. Vitacost's principal place of business is in Boynton Beach, Florida.  Vitacost developed an interest in selling Nutraceutical's products.  Nutraceutical consistently refused entering into any business transactions with Vitacost.

In February 2005, Vitacost's general counsel sent a letter to Nutraceutical in Utah demanding to sell all of Nutraceutical's manufactured products.  Vitacost's letter raised concerns that Nutraceutical's consistent refusal to do business with Vitacost may constitute violations of federal and/or state antitrust laws.  A week later, Vitacost sent another letter threatening litigation if Nutraceutical refused to enter into a business relationship within a week.  On March 14, 2005, Nutraceutical sent a letter detailing why it believed it was not violating antitrust laws. The letter also clarified Nutraceutical's position relating to its right to choose its customers and that its new account application establishes minimum criteria, including having a retail store. Nutraceutical also informed Vitacost that it was not interested in selling its products to Vitacost but would be willing to continue a dialogue for future business possibilities.

On March 15, 2005 Nutraceutical filed this action to obtain a declaratory judgment that it

2

was not in violation of antitrust or anti-competition laws by refusing to do business with Vitacost.  Nutraceutical did not, however, immediately serve the Complaint on Vitacost.  This court entered an Order to Show Cause why the case should not be dismissed on August 3, 2005.  On the same day, Nutraceutical also responded to the court's Order to Show Cause.  The court therefore, did not take any action with regard to the Order to Show Cause.

Also on August 3, 2005, Vitacost sent Nutraceutical a letter confirming Vitacost's actions in furtherance of setting up a business relationship between the parties, including complying with Nutraceutical's request to open a retail store solely to sell all of Nutraceutical's products.  In response to the August 3 letter, Nutraceutical sent a letter explaining that it had not entered into a business relationship with Vitacost, nor did it intend to do business with Vitacost at any point in the future.  It also explained that it had not requested that Vitacost open a retail store.  As a result of and in response to these events, Nutraceutical filed an Amended Complaint on August 9, 2005.  Vitacost accepted service on August 16, 2005.  Shortly thereafter, on November 18, 2005, Vitacost filed an action against Nutraceutical in Florida.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the factual allegations in the complaint, if true, would entitle the plaintiff to a legal remedy.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Dismissal is appropriate only when "the plaintiff can prove no set of facts in support of his claims to entitle him to relief."  *Cottrell, Ltd. v. Biotrol Int'l,* 191 F.3d 1248, 1251 (10th Cir. 1999).  Granting a defendant's motion to dismiss is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Id.*

3

(quotations omitted).

## DISCUSSION

Vitacost seeks to dismiss Nutraceutical's Amended Complaint on two grounds. Vitacost contends that this court lacks jurisdiction over this matter claiming that there is no case or controversy between the parties, and therefore the action must be dismissed. Second, Vitacost denies that this court may exercise personal jurisdiction over Vitacost. Whether a case or controversy exists or whether this court may exercise jurisdiction over Vitacost are separate inquiries. We turn to these questions below.

**A.     The Declaratory Judgment Act**

The first argument advanced by Vitacost is that the Amended Complaint should be dismissed because there is no actual case or controversy between the parties, thus a declaratory judgment should not issue. "Federal courts may only decide cases or controversies, U.S. Const. art. III, § 2, a requirement that is no less strict in an action for a declaratory judgment than in any other type of suit." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 965 (10th Cir. 1996) (assuming jurisdiction in antitrust suit). This requirement is reflected in the Declaratory Judgment Act, limiting its application to "actual controversies." 28 U.S.C. § 2201(a). "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id*. When a controversy is "definite and concrete, touching the legal relations of the parties having adverse legal interests" the issuance of a declaratory judgment may be warranted. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937) (construing Declaratory Judgment

4

Act).

In the Tenth Circuit, "the test [for the issuance of a declaratory judgment] is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989) (quotations omitted).  In certain situations, "[t]he threat of litigation can establish a justiciable controversy if it is specific and concrete. We look to the practical likelihood that controversy will become real."  *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002); *see also National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 565 (9th Cir. 1987) (holding threat of antitrust litigation is sufficient "case or controversy" under Declaratory Judgment Act).

Nutraceutical claims in the Amended Complaint that Vitacost threatened Nutraceutical with both federal and state antitrust liability in its February 2005 letters.  Specifically, Nutraceutical claims that Vitacost's February 16 letter tacitly threatened "an Antitrust and/or Unfair Trade Practices battle with Nutraceutical" and its February 24 letter explicitly threatened "legal action in the Circuit Civil Court of Palm Beach County Florida."  Nutraceutical argues that the Declaratory Judgment Act allows it to adjudicate its rights prior to any potential injury to Vitacost.  Nutraceutical argues, and this court agrees, that it has carried its burden of establishing that a case or controversy exists between these parties.[1]

---

[1]Vitacost claims that because it has subsequently filed an action against Nutraceutical in Florida, dismissal is appropriate here.  The court does not agree.  Moreover, the filing of the Florida action lends weight to Nutraceutical's argument that a case or controversy exists here.

**B.      Jurisdiction**

Turning to jurisdiction, Vitacost next contends that the court lacks personal jurisdiction

over it.[2]  When a court's jurisdiction is contested on a motion to dismiss under Federal Rule of

Civil Procedure 12(b)(6), a plaintiff bears the burden of establishing personal jurisdiction over

the defendant.  *See Systems Designs, Inc. v. New Customware Co., Inc.*, 248 F. Supp. 2d 1093,

1095 (D. Utah 2003).  In the preliminary stages of litigation, the plaintiff's burden is only to

establish a prima facie case that jurisdiction exists.  *Hafen v. Strebeck*, 338 F. Supp. 2d 1257,

1260 (D. Utah 2004).  All factual disputes are resolved in favor of the plaintiff when determining

the sufficiency of this showing.  *See Purco Fleet Servs., Inc. v. Towers*, 38 F. Supp. 2d 1320,

1322 (D. Utah 1999).

"It is well settled that to obtain personal jurisdiction over a nonresident defendant in a

diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum

state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth

Amendment."  *Hafen*, 338 F.Supp.2d at 1260.  "It is frequently helpful to undertake the due

process analysis first, because any set of circumstances that satisfies due process will also satisfy

the long-arm statute."[3] *Boggiano v. OfficialCitySites.Org*, 2006WL 1044363, *1 (D. Utah April

---

[2]The Declaratory Judgment Act does not independently confer jurisdiction upon federal
courts, thus the court's power to issue declaratory judgments must lie in some independent basis
of jurisdiction.  *Cardtoons, L.C.*, 95 F.3d at 964.  Here, the relevant basis is diversity jurisdiction
under 28 U.S.C. § 1331.

[3]Under Utah's long-arm statute, the court has personal jurisdiction over a defendant
based on either (1) the transaction of any business within Utah; (2) the contracting to supply
goods or services to Utah; or (3) the causing of any injury within Utah.  Utah Code Ann. §78-27-
24.

17, 2006) (quoting *Systems Designs, Inc. v. New Customward Co.*, 248 F. Supp. 2d 1093, 1097

(D. Utah 2003)).  To satisfy the constitutional requirement of due process there must be

"minimum contacts" between the defendant and the forum state.  *World-Wide Volkswagen Co. v.*

*Woodson*, 444 U.S. 286, 291, 100 S. Ct. 559, (1980).  The "minimum contacts" standard may be

met by a finding of either general jurisdiction or specific jurisdiction over the defendant.

*Boggiano*, 2006 WL 1044363 at *1.

      Nutraceutical claims that this court has general personal jurisdiction over Vitacost.

"General personal jurisdiction permits a court to exercise power over a defendant without regard

to the subject of the claim asserted.  For such jurisdiction to exist, the defendant must be

conducting substantial and continuous local activity in the forum state."  *Soma Med. Int'l v.*

*Standard Chartered Bank,* 196 F.3d 1292, 1295 (10th Cir. 1999).  "[T]he following factors are

relevant to the issue of whether general personal jurisdiction exists: Whether the corporate

defendant is (1) engaged in business in this state; (2) licensed to do business in this state; (3)

owning leasing, or controlling property (real or personal) or assets in this state; (4) maintaining

employees, offices, agents, or bank accounts in this state; (5) present in that shareholders reside

in this state; (6) maintaining phone or fax listings within this state; (7) advertising or soliciting

business in this state; (8) traveling to this state by way of salesperson, etc.; (9) paying taxes in

this state; (10) visiting potential customers in this state; (11) recruiting employees in this state;

(12) generating a substantial percentage of its national sales through revenue generated from

Utah customers.  *Id*. at 1295-96 (citing *Buddensick v. Stateline Hotel, Inc.*, 972 P.2d 928, 930-31

(Ut. Ct. App. 1998), *cert. denied*, 982 P.2d 88 (Utah 1999), *cert. denied*, 528 U.S. 928 (1999).

      Nutraceutical contends that Vitacost maintains an interactive website through which it

does business over the internet with Utah residents.  Nutraceutical further claims that through its

website, which is "clearly and deliberately structured to operate as a sophisticated virtual store,"

Vitacost enters into contracts with Utah residents over the internet.  *See Gator.Com v. L.L. Bean,*

*Inc.*, 341 F.3d 1072, 1078 (9th Cir. 2003) (finding general jurisdiction based in part on

interactive website).  One way to determine whether Vitacost, through its website, has the

requisite minimum contacts with Utah is to use the internet website sliding scale analysis set

forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D. Pa. 1997).

"The Tenth Circuit appears to endorse this sliding scale analysis for determining the likelihood

that [general] personal jurisdiction may be constitutionally exercised over a nonresident

defendant based upon the defendant's website activities."  *Rainy Day Books, Inc. v. Rainy Day*

*Books & Café, L.L.C.*, 186 F. Supp. 2d 1163, (D. Kan. 2002) (citing *Soma Medical Int'l*, 196

F.3d at 1296-97).

> As the Tenth Circuit observed in *Soma Medical*, the *Zippo* analysis categorizes
> Internet websites into three general categories along a sliding scale: First,
> personal jurisdiction is established when 'a defendant clearly does business over
> the Internet,' such as entering into contracts which require the 'knowing and
> repeated transmission of computer files over the Internet.'  Second, exercising
> personal jurisdiction is not appropriate when the Internet use involves '[a] passive
> Web site that does little more than make information available to those who are
> interested in it.'  Under these circumstances, 'a defendant has simply posted
> information on an Internet Web sit which is accessible to users in foreign
> jurisdictions.'  Third, a middle category encompasses 'interactive Web sites where
> a user can exchange information with the host computer.'  Whether the exercise
> of jurisdiction is appropriate depends upon 'the level of interactivity and
> commercial nature of the exchange of information that occurs on the Web site.'

*Id.*  (quoting *Soma Medical*, 196 F.3d at 1296).

Nutraceutical argues that Vitacost's fully interactive web site constitutes substantial and

continuous local activity in Utah for general jurisdiction purposes.  *See id.*  Nutraceutical claims

8

that through its website, Vitacost is doing business in Utah "by consistently and systematically 'entering into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet.'" *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 513 (D.C. Cir. 2002) (*quoting Zippo Mfg. Co.*, 952 F. Supp. at 1124).

Applying this framework and resolving all factual disputes in favor of Nutraceutical, the court finds that Vitacost's website falls within the category of "clearly doing business over the Internet." *Id.* Vitacost's website allows an internet user to purchase Vitacost's products online. *Kaufman Aff.* (doc. 11)*,* Exs. 2-6. Consumers can search for specific products; place items in virtual shopping carts; view product descriptions, price and pictures; sign up for EZShip, Vitacost's automatic shipment program to reorder products; and purchase products through "Check-Out" by providing credit card and shipping information. *Id.* The court concludes that Vitacost purposefully and deliberately set up and operated a website with a high level of interactivity, which encourages customers accessing its website to order its products from which Vitacost receives economic benefits from the product sales. As such, such Vitacost's website falls within the sliding scale category of website that allows a defendant to "do business" and "enter into contracts with residents of foreign jurisdictions over the Internet." *Gorman*, 293 F.3d at 513. As Nutraceutical has established that Vitacost's website constitutes a commercial web site, Nutraceutical has demonstrated that Vitacost has purposefully availed itself of the privilege of doing business in the jurisdiction.

Asserting jurisdiction over Vitacost in this case is consistent with due process jurisprudence. Accordingly, the court finds that Nutraceutical has met its *prima facie* burden of demonstrating that Vitacost has purposefully availed itself of the privileges of conducting

business in Utah, satisfying the "minimum contacts" component of the due process analysis. Thus, the court does not consider whether it has specific jurisdiction over Vitacost and it is unnecessary to undertake an analysis of the nexus between any alleged transactions by Vitacost in Utah and alleged conduct giving rise to the Complaint.

## CONCLUSION

Based upon the above reasoning, IT IS HEREBY ORDERED that Vitacost's Motion to Dismiss is DENIED.

DATED this 25th day of May, 2006.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

10